**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

TONY J. WALTON,

                     Petitioner,

v.                                      CIVIL ACTION NO.   2:15-cv-11423

DAVID BALLARD,
       Warden

                     Respondent.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Tony J. Walton's ("Petitioner") petition pursuant to 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("§ 2254 Petition"), (ECF No. 1), and Respondent's Motion for Summary Judgment, (ECF No. 56).   On March 24, 2017, this action was re-referred to United States Magistrate Judge Cheryl A. Eifert for submission of proposed findings and recommendations for disposition ("PF&R").   (ECF No. 32.)   On November 20, 2017, Magistrate Judge Eifert filed her PF&R, (ECF No. 64), recommending that this Court grant the Motion for Summary Judgment, and deny and dismiss the § 2254 Petition.   Objections to the PF&R were due by February 5, 2018, and Petitioner timely filed objections on December 14, 2017 ("Objections").[1]   (ECF No. 68.)

---

[1] Petitioner contemporaneously filed a Motion to Exceed the Page Limitation with his Objections.   (ECF No. 67.) The Court **GRANTS** the motion and will consider Petitioner's objections in their entirety.

For the reasons discussed herein, the Court **OVERRULES** the Objections, **ADOPTS** the PF&R, **GRANTS** the Motion for Summary Judgment, **DENIES** Petitioner's Petition for a Writ of Habeas Corpus, and **DISMISSES** this case from the docket of the Court.

## *I. BACKGROUND*

On December 11, 2009, Petitioner was found guilty of one count of first-degree robbery and one count of assault during the commission of a felony after a jury trial in the Circuit Court of Fayette County, West Virginia. (ECF No. 13-1 at 384.) On January 26, 2010, Petitioner was sentenced to 50 years' imprisonment for the robbery and 2 to 10 years' imprisonment for the assault. (ECF No. 13-2 at 24.) The complete factual and procedural history of Petitioner's direct appeal and habeas proceeding in state court, as well as a review of Petitioner's claims in his federal habeas petition, are set forth in detail in the PF&R and need not be repeated here. Petitioner, in his Objections, concedes the accuracy of this history. (*See* ECF No. 68 at 1.) As such, the Court adopts the factual and procedural history as set forth in the PF&R. The Court will provide a discussion of any relevant facts from Petitioner's original criminal case as necessary throughout this opinion to resolve Petitioner's objections. The § 2254 Petition claims the following grounds for relief:

1. Actual Innocence – "There was overwhelming evidence to prove that Petitioner was innocent of the robbery charges against him that were not used in the defense of Petitioner. . . . [I]t is crystal clear that if the evidence was used properly in the defense of Petitioner, it is more likely than not, that no reasonable juror would have convicted Petitioner."

2. Ineffective Assistance of Counsel – Defense Counsel's inexperience and the actions taken or lack thereof by counsel resulted in ineffective assistance of counsel, violating Petitioner's rights under the Sixth Amendments.

3. Denial of Fair and Impartial Jury – Defense Counsel's failure to make objections during voir dire and connections between jurors and the prosecution

and interested parties denied Petitioner of his constitutional right to a fair and impartial jury violating the Fifth and Fourteenth Amendments.

4. Use of Lineup Photo – It was a violation of Defendant's rights and the Fifth and Fourteenth Amendments when the State used the photo lineup to identify Petitioner, as there was no foundation for the admission of the photo. Defense Counsel also failed to object to the admission.

5. Improper Jury Instruction – "An erroneous instruction given by the trial judge [regarding intimidation and retaliation against jurors and witnesses] deprive[d] petitioner of his federal constitution, a right to a fair trial . . . ."

6. Denial of the Right to a Jury of One's Peers – ". . . [T]here was no people of color on the panel to choose from . . . . The town . . . where petitioner went to trial is well known to be a racist town . . . ."

7. Ineffective Assistance of Appeal Counsel – "Appeal counsel . . . did not consult him once while preparing petitioner appeal. There were errors by trial court that needed discussed."

(ECF No. 1-1.) The PF&R thoroughly analyzes each of Respondent's claims as argued in the motion for summary judgment, and it recommends that this Court grant Respondent's Motion for Summary Judgment, (ECF No. 56), deny Petitioner's Petition for Writ of Habeas Corpus, (ECF No. 1), and dismiss this matter from the Court's docket.

## II. LEGAL STANDARDS

### A. Review of Magistrate Judge's Findings and Recommendations

Pursuant to Federal Rule of Civil Procedure 72(b)(3), the Court must determine *de novo* any part of a magistrate judge's disposition to which a proper objection has been made. The Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Failure to file timely objections constitutes a waiver of *de novo* review and the petitioner's right to appeal this Court's

order.   28 U.S.C. § 636(b)(1); *see also Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).   In addition, this Court need not conduct a *de novo* review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

### B.   Habeas Corpus Standard of Review

A federal court may grant habeas relief for a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2254(a).   "Therefore, when a petitioner's claim rests solely upon an interpretation of state case law and statutes, it is not cognizable on federal habeas review."   *Weeks v. Angelone*, 176 F.3d 249, 262 (4th Cir. 1999), *aff'd*, 528 U.S. 225 (2000).

Section 2254(d), as modified by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides for a deferential standard of review to be applied to any claim that was "adjudicated on the merits" in state court proceedings.   In such a case, a federal court may grant habeas relief only if the adjudication of the claim in state court

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Section 2254(d)(1) describes the standard of review to be applied to claims challenging how the state courts applied federal law.   "A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in

[Supreme Court] cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case." *Id.* The latter inquiry focuses on whether the state court's application of clearly established federal law was "unreasonable," as distinguished from whether it was "correct." *See Renico v. Lett*, 559 U.S. 766, 773 (2010); *Bell*, 535 U.S. at 694; *Williams v. Taylor*, 529 U.S. 362, 410 (2000).

Section 2254(d)(2) describes the standard to be applied to claims challenging how the state courts determined the facts. "[A] determination of a factual issue made by a State court [is] presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "The phrase 'adjudication on the merits' in section 2254(d) excludes only claims that were not raised in state court, and not claims that were decided in state court, albeit in a summary fashion." *Thomas v. Taylor*, 170 F.3d 466, 475 (4th Cir. 1999); *see also Harrington v. Richter*, 562 U.S. 86, 98 (2011) (recognizing that § 2254(d) applies even if the state court issued a summary decision unaccompanied by an explanation). The state court determination will be upheld so long as "fairminded jurists could disagree" on its correctness. *Yarbrough v. Alvarado*, 541 U.S. 652, 664 (2004).

### C. *Summary Judgment*

Federal Rule of Civil Procedure 56 governs motions for summary judgment. That rule provides, in relevant part, that summary judgment should be granted if "there is no genuine issue as to any material fact." Summary judgment is inappropriate, however, if there exist factual issues

that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). When construing such factual issues, the Court must view the evidence "in the light most favorable to the [party opposing summary judgment]." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks omitted) (citation omitted). The court will consider each motion individually, "tak[ing] care to resolve all factual disputes and any competing rational inferences in the light most favorable to the party opposing that motion." *Id.* (internal quotation marks omitted) (citation omitted). The nonmoving party may not rest on the pleadings alone and must show that specific material facts exist by offering more than a mere "scintilla of evidence" in support of his position. *Anderson*, 477 U.S. at 252.

### III. DISCUSSION

Petitioner lodges six specific objections to the PF&R and asserts that Magistrate Judge Eifert failed to address two contentions raised in Respondent's Motion for Summary Judgment. The Court **ADOPTS** and **AFFIRMS** the PF&R, without *de novo* review, in regard to all of the claims which Petitioner has failed to object to. In regard to the claims that Petitioner has lodged his objections, the Court will now conduct a *de novo* review.

#### A.   *Ineffective Assistance of Counsel*

6

Petitioner's specific objections to the PF&R concern the alleged ineffective assistance of counsel ("IAC") by his Defense Counsel at the trial level. These objections relate to the PF&R's conclusion that Respondent is entitled to summary judgment as to Ground 2 of the § 2254 Petition. (*See* ECF No. 1-1 at 14–24.)

Petitioner must overcome two layers of deference for the Court to sustain his IAC objections. First, the Supreme Court's pronouncement in *Strickland* accords to his counsel a "highly deferential" level of judicial scrutiny. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id.* The burden falls to Petitioner to demonstrate otherwise. *See id.* at 690 ("A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."). If counsel made a "strategic choice" after "thorough investigation of law and facts," the act is "virtually unchallengeable." *Id.* Acts or omissions not determined to be strategic—either because they were not adequately informed or they were not conscious decisions at all—are still analyzed by an objective reasonableness standard. *See Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *Kimmelman v. Morrison*, 477 U.S. 365, 375, 386 (1986).

If the reviewing court determines under this deferential standard that counsel's action fell outside the accepted range of professionally reasonable conduct, the challenger must also show that he was prejudiced by the errors—that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466

U.S. at 694.   A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.   *Id.*   In addressing IAC claims, courts may address either issue—counsel's performance or prejudice from the alleged error—first, since a finding adverse to the petitioner on either issue is dispositive.   *See id.* at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one. . . . If it is easier to dispose of [the] claim on the ground of lack of sufficient prejudice, . . . that course should be followed.").

In addition to this deferential standard, § 2254 petitioners making IAC claims must show that the reviewing state court applied *Strickland* unreasonably.   *See Elmore v. Ozmint*, 661 F.3d 783, 856–66 (4th Cir. 2011).   The Supreme Court has noted that "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so."   *Harrington*, 562 U.S. at 105 (internal quotation marks omitted) (citations omitted) (noting that "[s]urmounting *Strickland*'s high bar is never an easy task" and that "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult").   "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.   The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."   *Id.*   Ultimately, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."   *Id.* at 103.

### 1.  *Cross-Examination of Victim*

First, Petitioner objects to the PF&R's conclusion "that the circuit court's decision that

Petitioner's trial counsel was not constitutionally ineffective in addressing the victim's 'inconsistent' identifications of Petitioner at trial was not contrary to, or an unreasonable application of, clearly established federal law." (*See* ECF No. 64 at 13–15.) The PF&R finds that Respondent is entitled to summary judgment on this ground. (*Id*. at 15.)

Petitioner originally raised this argument in his state habeas corpus petition, (ECF No. 13-7 at 10.), for which the Circuit Court of Fayette County conducted an evidentiary hearing that included testimony from Petitioner's trial counsel, Elizabeth Kearney Campbell. (*See* ECF No. 13-9.) In its ruling, the circuit court notes that Petitioner framed his argument on the basis that his counsel "did not put on any evidence about discrepancies in the descriptions;" an assertion that was "blatantly false." (*See* ECF No. 13 at 60.) The circuit court reviewed the transcript of the underlying trial and found that trial counsel "subjected [the victim] to considerable cross examination on the issue of inconsistences in her descriptions of the attacker." (*See id*.) Furthermore, regarding trial counsel's use of the inconsistent descriptions in the 911 tape, the circuit court found that trial counsel made a "strategic and tactical move" and "did a reasonably adequate job of attempting to exploit these slight discrepancies." (*See id*. at 60–61.) The circuit court ultimately determined that trial counsel's performance was not "deficient under an objective standard of reasonableness." (*See id*. at 61.) On appeal, the Supreme Court of Appeals of West Virginia ("SCAWV") found that there was no error or abuse of discretion by the circuit court and adopted the circuit court's "well-reasoned findings and conclusions of law . . . ." (*See* ECF No. 13-8.) Accordingly, 28 U.S.C. § 2254(d) applies, and the question becomes whether the state court's adjudication of Petitioner's cross-examination claim "was an unreasonable application" of *Strickland* or involved an unreasonable determination of the facts in light of the evidence

presented.   *See* § 2254(d); *see also Tice v. Johnson*, 647 F.3d 87, 103 (4th Cir. 2011) ("The rule

and analytical framework announced by the Supreme Court in *Strickland* 'unquestionably qualifies

as "clearly established" federal law under § 2254(d).'" (quoting *Frazer v. South Carolina*, 430

F.3d 696, 703 (4th Cir. 2005))).

Petitioner objects on the basis that "[c]ounsel failed to enter evidence of [the] victim's

inconsistent descriptions."   (*See* ECF No. 68 at 2–13.)   This Court is in concurrence with the

preceding courts that Petitioner's objection is blatantly false.   This is demonstrated by the

following passages from the trial transcript:

BY MS. KEARNEY [CAMPBELL]:

Q Can I first start off with asking, do you remember how many descriptions you
gave to law enforcement as they were investigating this or –

THE COURT: Or 911?

BY MS. KEARNEY [CAMPBELL]

Q To 911 and the investigating officers, do you remember how many times they
made you describe what was going on?

A No, ma'am.

Q We heard testimony today from law enforcement that you described your attacker
as a light-skinned black man with a gray hoodie, sweat pants and gloves.   Is that
correct?

A Yes

Q You also had the opportunity to describe to the 911 Center in your phone call to
them – after the attack happened, you had an opportunity and they asked you to
describe your assailant. Do you remember that?

A I remember talking to the 911 Center that day.

Q Okay. And they asked you when -- if you could describe your attacker, and you
did so. And I have a copy of the transcription of the 911 call. And if I could just

refresh your memory, I will let you know what you reported to the 911 Center, and you can tell me if that's accurate. Okay?

A Yes.

Q Okay. The 911 Center asked you, "Is there anything you can tell me about this black male?" And you replied to them, "He is very, very black. Wore jersey gloves, brown-looking things." Do you remember making that statement? Is it fair to say that you made that to the 911 Center?

A Ma'am, I'm honestly -- I don't -- I'm not sure.

Q Okay. All right. I know it happened right after the attack, so I understand where your memory might not be as good because of the trauma. But would you disagree with me that

MR. PARSONS: Your Honor, she can't disagree if she doesn't remember making the statement.

THE COURT: Well, I'm going to overrule the objection. If the 911 tape has you saying that, ma'am, do you dispute that you told 911 that?

THE WITNESS: No, sir. That day was just a it was -- it was not a good day I –

(ECF No. 13-1 at 184–86.) Trial counsel clearly brought the inconsistent descriptions given by the victim to the attention of the jury by eliciting the response during cross-examination and addressing them again during closing arguments, (*see id*. at 352–54). However, Petitioner further asserts that "if the 911 tape would have been entered into evidence it would have seriously called the victims [sic] description into question which would have caused the reasonable doubt the jury needed to acquit." (*See* ECF No. 68 at 2.) Petitioner attempts to argue that trial counsel's actions were unreasonable and prejudicial, and that trial counsel's omission of admitting the 911 tape into evidence implicates *Strickland*, but his argument fails. The method that counsel chooses to use evidence in a trial falls squarely within the highly deferential standard and strong presumption that such conduct falls within the wide range of reasonable profession assistance provided to counsel

under *Strickland*.  *Strickland*, 466 U.S. 668, 689 (1984).  Here, trial counsel's decision to not use

the 911 tape, but cross-examine the victim regarding the statements made on the 911 tape, was

clearly a strategic choice by trial counsel, which the *Strickland* court has found as virtually

unchallengeable.  *Id*. at 690.  Trial counsel testified during her evidentiary hearing that she made

a conscious choice not to play or enter the 911 tape into evidence because she believed that playing

the emotionally charged tape, which included clips of the victim screaming and crying, could

detrimentally affect Petitioner.  (*See* ECF No. 13-9 at 43–45, 71–73.)  Further, trial counsel

testified that, through discussion with Petitioner, the focus of their case would be primarily upon

his defense in alibi and the forensic evidence and she wanted to avoid vigorously cross-examining

a witness, the victim, who appeared to be very frail and could end up hurting Petitioner's case.

(*Id*. at 39–44.)  The Court does not find that trial counsel acted outside the wide range of

professionally competent assistance.

Pursuant to the standard in § 2254(d), the Court finds that the circuit court's adjudication

of this claim did not result in a decision contrary to, or involve an unreasonable application of,

federal law, nor was it based on an unreasonable determination of the facts in light of the evidence

presented.  *See* 28 U.S.C. § 2254(d).  Accordingly, the Court **OVERRULES** Petitioner's

objection as to IAC based on trial counsel's cross-examination of the victim.

### 2.  *Failure to Investigate Evidence*

Second, Petitioner objects to the PF&R's conclusion that "Petitioner's trial counsel was

not constitutionally ineffective in not forensically investigating the physical evidence or

challenging the state's failure to do so is not contrary to, or an unreasonable application of, clearly

established federal law."  (*See* ECF No. 64 at 15–20.)  The PF&R finds that Respondent is

entitled to summary judgment on this ground.  (*Id*. at 19–20.)

The circuit court's analysis of the claim began with Chief Deputy Canterbury's testimony at trial in which he stated that he observed parts of a broken mirror and bloodstain on the floor at the crime scene, in addition to a possible footprint going through the bloodstain (which was illustrated in State's Exhibit 10).  (ECF No. 1-2 at 38.)  The circuit court then noted that the victim testified that she was pushed into mirrors, which resulted in her bleeding onto the floor. (*Id*. at 38–39.)  The circuit court ultimately concluded that the smeared bloodstain failed to show any identifiable footprints, and thus in conjunction with the testimony of the victim and Chief Deputy Canterbury, did not render Petitioner's trial counsel deficient under an objective standard of reasonableness in failing to introduce evidence of blood samples or shoe size.  (*Id*.)

As to Petitioner's claim regarding counsel's investigation of the bloodstain, Petitioner objects on the basis that trial counsel should have investigated the bloodstain for exculpatory evidence because "Petitioner is innocent of this crime," and a proper investigation would have shown as such.  (*See* ECF No. 68 at 13–19.)  Under *Strickland*, counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. . . . [A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  466 U.S. at 691.  If counsel "conducts a reasonable investigation of law and facts in a particular case, his strategic decisions are 'virtually unchallengeable.'"  *Powell v. Kelly*, 562 F.3d 656, 670 (4th Cir. 2009) (quoting *Strickland*, 466 U.S. at 688).  To prevail on an IAC claim based on a failure to investigate, a petitioner must specify "what an adequate investigation would have revealed . . . ."  *Bassette v. Thompson*, 915 F.2d 932, 940–41 (4th Cir. 1990).

Here, Petitioner's objection is largely based on speculation. Petitioner argues that it is possible that the testing could have shown that the bloodstain or footprint did not belong to the victim or Petitioner, thus proving Petitioner's innocence. (ECF No. 68 at 17.) The victim stated the bloodstain at the scene of the crime came from her head wound. (ECF No. 13-1 at 170, 173.) It is reasonable in light of the circumstances that based on this testimony that trial counsel would not find that testimony to be false, especially under the high standard of deference provided to counsel's judgments regarding investigation. No sufficient evidence exists that would have allowed an investigation regarding the shoeprint. Further, Petitioner has not suggested, nor can he, what an investigation may have revealed.

Additionally, Petitioner argues that trial counsel should have questioned and impeached the investigating officers for their failure to collect and preserve possible exculpatory evidence. (*See* ECF No. 68 at 18–19.) Petitioner jumps on the fact that trial counsel admitted during the circuit court hearing that in hindsight she should have raised the issue of the police's failure to collect physical evidence or perform any forensic testing at the scene of the crime. (*Id.*; ECF No. 13-9 at 58.) However, the *Strickland* court clearly addressed hindsight analysis:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*Strickland*, 466 U.S. at 689 (1941) (internal citations omitted). Furthermore, as noted above, if counsel made a "strategic choice" after "thorough investigation of law and facts," the act is "virtually unchallengeable." *Id* at 690. Acts or omissions not determined to be strategic—either

14

because they were not adequately informed or they were not conscious decisions at all—are still analyzed by an objective reasonableness standard. *See Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *Kimmelman v. Morrison*, 477 U.S. 365, 375, 386 (1986).

As noted, trial counsel's acceptance of the statements by the victim and Chief Deputy Canterbury were not an unreasonable strategic decision in lieu of a possible investigation. Trial counsel's strategic decision to focus on the inconsistent statements instead of this evidence does not amount to unreasonableness under an objective standard. The law, as noted, is extremely deferential to the decisions trial counsel may make in the course of their professional assistance and this Court should not second-guess trial counsel's professional judgment after a finding that trial counsel acted reasonably based on an objective standard.

Pursuant to the standard in § 2254(d), the Court finds that the circuit court's adjudication of this claim did not result in a decision contrary to, or involve an unreasonable application of, federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d). Accordingly, the Court **OVERRULES** Petitioner's objection as to IAC based on trial counsel's failure to investigate.

### 3. *Photo Lineup Identification*

Third, Petitioner objects to the PF&R's conclusion that the use of a photo line up to identify Petitioner was not contrary to, or an unreasonable application of, clearly established federal law and that trial counsel's failure to object to the admission of the photographic line-up was not ineffective assistance of counsel. (*See* ECF No. 64 at 20–26.) The PF&R finds that Respondent is entitled to summary judgment on this ground. (*Id*. at 26.)

The circuit court began by reviewing the case law under West Virginia law and the

requirements thereof regarding the use of a photographic line-up for an out-of-court identification. (ECF No. 1-2 at 25.)  In applying the law to the facts of the case, the circuit court determined that the photographic line-up used in Petitioner's case was not suggestive and was consistent with applicable law.  (*Id*. at 25–26.)  The circuit court then turned to Petitioner's argument against admission of the out-of-court identification at trial.  The circuit court applied the test established in *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972), to evaluate "whether under the 'totality of the circumstances' the identification was reliable" if the confrontation procedure was suggestive. (ECF No. 1-2 at 33–36.)  Upon analysis of the factors presented in *Biggers*, the circuit court found that Petitioner's trial counsel could have objected to the foundation for the admission of the photographic line-up and the identification of Petitioner through the testimony of the person who prepared the photographic line-up, as opposed to the officer who conducted the actual identification, as hearsay testimony.  (*Id*. at 26–36.)  On this basis, the circuit court determined that trial counsel's failure to object to the admission of the photographic line-up and out-of-court identification of Petitioner was deficient under an objective standard of reasonableness and thus met the first *Strickland* prong.  (*Id*. at 28.)  However, the circuit court ultimately determined that there was not a reasonable probability that the result of the proceeding would have been different "but for" trial counsel's error.  (*Id*.)  The circuit court based its decision on the victim pointing out the Petitioner and identification of Petitioner in the courtroom as the man who attacked her. (*Id*. at 30.)  The circuit court further noted that the officer who witnessed the victim's identification of Petitioner from the photographic line-up was present at trial and available to testify and the victim testified that the State's Exhibit 21 was the photographic line-up that she was shown and pointed to the photograph of Petitioner that she identified on that earlier date. (*Id*. at

28–31.)

Petitioner objects on the basis that allowing the admission of the testimony is a violation of his constitutional rights and prejudiced him from being acquitted. (*See* ECF No. 19–27.) However, for a court to find that counsel acted in violation of *Strickland*, a defendant must enable a court to determine under this deferential standard that counsel's action fell outside the accepted range of professionally reasonable conduct, and the challenger must show that he was prejudiced by the errors—that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Here, while Petitioner asserts that the admission was in violation of constitutional standards and that the circuit court found that trial counsel's actions were unreasonable under *Strickland*, Petitioner fails to make a showing of prejudice. The victim testified at trial that the State's Exhibit 21 was the photographic line-up that she was shown on the day of the robbery and she pointed to the photograph of Petitioner that she previously identified. (ECF No. 13-1 at 174.) The victim also identified Petitioner in the courtroom as the man who attacked her. (*Id*. at 178.) Petitioner's failure to make a showing of prejudice and the victim's ultimate identification of Petitioner in the courtroom as the man that attacked her are enough to persuade this Court that there was no prejudice from the alleged error by trial counsel.

Pursuant to the standard in § 2254(d), the Court finds that the circuit court's adjudication of this claim did not result in a decision contrary to, or involve an unreasonable application of, federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d). Accordingly, the Court **OVERRULES** Petitioner's objection as to IAC based on trial counsel's failure to object to the admission of the photo line-up.

### 4. Detective Sizemore's Testimony

Fourth, Petitioner objects to the PF&R's conclusion that "Petitioner's trial counsel was not constitutionally ineffective by not objecting to Detective Sizemore's testimony" and that "Petitioner's additional claims that his trial counsel was ineffective because she did not perform additional investigation, cross-examination, or offer alterative theories to rebut Detective Sizemore's testimony are procedurally defaulted and to the extent that they are *not* procedurally defaulted, those claims are also without merit." (*See* ECF No. 64 at 26–38.) (emphasis in original). The PF&R finds that Respondent is entitled to summary judgment on this ground. (*Id.* at 38.) As only one of these claims has been exhausted, the Court will address them separately.

#### a. Lack of Objection to Expert Testimony

On habeas review, the circuit court agreed with Petitioner's trial counsel's testimony that she did not consider Detective Sizemore's testimony to be expert testimony. (ECF No. 1-2 at 40–42.) Even as such, the circuit court noted that in light of Detective Sizemore's testimony regarding his qualifications, the court would have likely qualified him as an expert over any objection by trial counsel. (*Id.* at 43.) The circuit court found that allowing Detective Sizemore to testify "was a strategic decision to . . . in an attempt to lend credence to the defense's overarching theory that the police had arrested the wrong person." (*Id.* at 42.) The circuit court also found that Petitioner failed to show any reasonable probability that an objection to the testimony would have resulted in a different outcome. (*Id.* at 43.)

Petitioner objects on the basis that trial counsel should have objected to the testimony provided by Detective Sizemore because "he was a 'lay witness' giving 'expert' testimony and was never qualified an expert by the court." (*See* ECF No. 68 at 30.) Petitioner maintains that

18

this failure to object gave credibility to Detective Sizemore's misleading testimony. (*See id*.) Trial counsel testified at the evidentiary hearing that it might have been better for her to seek a pretrial hearing to challenge Detective Sizemore's qualifications and testimony as a way to "trip him up" or "shake him up as a witness" prior to the trial. (ECF No. 13-9 at 51–52.)

Once again, it is not the duty of this Court to lend its insight through hindsight. It is the duty of this court to apply the *Strickland* standard and make an inquiry into whether counsel acted outside the wide range of professionally competent assistance, based on the circumstances as a whole. *See Strickland*, 466 U.S. at 690. If counsel made a "strategic choice" after "thorough investigation of law and facts," the act is "virtually unchallengeable." *Id*. Trial counsel testified that it was her strategy to focus on the lack of forensic evidence linking Petitioner to the crime. (*See* ECF No. 13-9 at 51–52.) Trial counsel put this strategic plan into action during her cross-examination of Detective Sizemore and by calling an expert in forensic science to testify. (*See* ECF No. 13-1 at 136–42, 277–80.) Trial counsel's actions are clearly a strategic choice, and are not unreasonable or outside the wide range of professionally competent assistance, making her actions virtually unchallengeable. Furthermore, Petitioner fails to provide any evidence of prejudice from trial counsel's failure to object, especially in light of the circuit court finding that it ultimately would have found Detective Sizemore to be qualified as an expert if the State had so moved.

Pursuant to the standard in § 2254(d), the Court finds that the circuit court's adjudication of this claim did not result in a decision contrary to, or involve an unreasonable application of, federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d). Accordingly, the Court **OVERRULES** Petitioner's

objection as to IAC based on trial counsel's failure to object to the testimony of Detective Sizemore.

### b. *Lack of Investigation of Green Fluorescent Spots*

Petitioner claims that his trial counsel was ineffective because she did not perform additional investigation, cross-examination, or offer alterative theories to rebut Detective Sizemore's testimony, and objects to the PF&R's conclusion that these claims are without merit. (*See* ECF Nos. 1-1 at 7–17; 68 at 27–33.)   The Court will choose to review these claims on the merits only as Petitioner failed to exhaust these claims when he failed to raise them in his state habeas proceeding.

Petitioner ultimately wanted trial counsel to investigate the pepper spray to see if it contained a certain ingredient that would have explained the fluorescence on Petitioner's face during the investigation.   (*See* ECF Nos. 1-1 at 7–17; 68 at 27–33.)   He asserts that trial counsel should have asked Detective Sizemore "whether this information was confirmed by the company who sold mace" and investigated "these claims about the marking dye by contacting the company that produced the mace."   (*See* ECF No. 68 at 30.)   Petitioner wanted trial counsel to seize "the opportunity to contact the company to be 'sure' of the mace's contents concerning the marking dye" because he believed that the fluorescence discovered on his face could have been the result of an alternative substances such as soap or gas fumes from his four-wheeler.   (*Id*.; ECF No. 1-1 at 7–8.)   Petitioner also asserts that trial counsel should have cross-examined Detective Sizemore about other substances that could have caused the fluorescence.   (ECF No. 1-1 at 7–8.)

As noted above, under *Strickland*, counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. . . . [A]

particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  466 U.S. at 691. To prevail on an IAC claim based on a failure to investigate, a petitioner must specify "what an adequate investigation would have revealed . . . ."  *Bassette v. Thompson*, 915 F.2d 932, 940–41 (4th Cir. 1990).

Petitioner's entire argument is based on speculation.  Petitioner does not argue that the pepper spray contained marking dye or that it did not.  He merely believes that trial counsel should have called the company that made the mace to make sure Detective Sizemore was telling the truth.  (*See* ECF No. 68 at 30.)  An investigation might have revealed that there was no dye in the pepper spray, but Petitioner provides no evidence that such a conclusion is likely.  While it may have been prudent for trial counsel to investigate whether there was dye in the pepper spray, trial counsel took a different strategic path to discredit the testimony of Detective Sizemore, as discussed above.  It is not the duty of this Court to second-guess the strategic decision made by counsel.  *Strickland*, 466 U.S. at 689.  This Court is to determine whether counsel acted unreasonable, while according "a heavy measure of deference to counsel's judgments."  *Id.* at 691.  In light of the heavy deference given to counsel's judgments, the Court does not find that counsel's decisions were unreasonable in all of the circumstances.

Accordingly, the Court **OVERRULES** Petitioner's objection regarding trial counsel's failure to investigate the pepper spray.

*5.  Jury Bias*

Fifth, Petitioner objects to the PF&R's conclusion that "the circuit court's decision that Petitioner's trial counsel was not constitutionally [deficient] in responding to what Petitioner

21

contends was indicia of jury bias was not contrary to, or an unreasonable application of, clearly established federal law." (*See* ECF No. 64 at 47–52.) Specifically, this relates to the trial judge stating on the record that a juror approached the court reporter during the lunch hour recess and advised that the juror knew some of the spectators in the courtroom and wanted to know if it was something that should be disclosed, (ECF No. 13-1 at 119), and during jury deliberation, the jury foreman provided a note to the circuit court stating that the same juror who previously expressed recognizing spectators in the courtroom was "now afraid of repercussions from the family" and the jury was "unable to move forward at this time." (ECF Nos. 1-1 at 27, 1-2 at 50, 13-1 at 370, 58 at 16, 58-1 at 2). The PF&R finds that Respondent is entitled to summary judgment on this ground. (*See* ECF No. 64 at 52.)

On habeas review, the circuit court first addressed the juror knowing a spectator in the gallery and trial counsel's response to this disclosure. The circuit court found that recognition of a spectator in a courtroom is not enough to disqualify that juror from sitting on the jury. (ECF No. 12 at 46–47.) Furthermore, the circuit court did not find that this recognition altered the juror's affirmation to review the evidence without bias or prejudice based upon the spectator recognition. (*Id*. at 48.) Upon these bases, the circuit court determined that Petitioner's trial attorney did not act deficiently by failing to act upon the juror's statement. The circuit court even entertained the hypothesis that had trial counsel failed to act when she should have, Petitioner failed to show that but for her failure, there was a reasonable probability that the results of the proceeding would have been different. (*Id*. at 49–50.) Concerning the note by the foreman, the circuit court began its address of the argument by noting that trial counsel moved for a mistrial and objected to a curative instruction, and moved for a new trial during sentencing as well. (ECF No.

1-2 at 50–51.)   While Petitioner argued that trial counsel should have asked for a voir dire instead of a mistrial, the circuit court noted that it is not the duty of the circuit court to determine whether a different approach should have been used by counsel based on hindsight.   (*Id*. at 51.)   Rather, the circuit court noted that the standard under *Strickland* is based on whether counsel acted outside the *wide range* of professionally competent assistance, which the circuit court found trial counsel did not.   (*Id*.) (emphasis in original).

As this Court has already noted, it is not the duty of this Court to apply its own determination of what the appropriate course of action should have been for trial counsel.   *See Strickland*, 466 U.S. at 689 (1941).   The standard for ineffective assistance of counsel does not turn on a conclusion by this Court based on hindsight, but rather an inquiry into whether counsel acted outside the wide range of professionally competent assistance, based on the circumstances as a whole.   *Id*. at 690.   If counsel made a "strategic choice" after "thorough investigation of law and facts," the act is "virtually unchallengeable."   *Id.*   To the extent that Petitioner objects to the decisions of his counsel to not ask the trial court to conduct a voir dire of the juror, and move for a mistrial instead of asking for a voir dire, it is a clear attempt to have the Court conduct an analysis of trial counsel's tactical decisions based on hindsight.   Here, trial counsel did not act upon the disclosure that a juror knew someone in the gallery.   The Court does not find this to be unreasonable, especially in light of the small town in which the trial took place as noted by the circuit court on habeas review, (ECF No. 1-2 at 47–48).   Petitioner also fails to make any showing that the juror's recognition of someone in the gallery was prejudicial.   Further, when viewing the circumstances as a whole, the Court does not find it unreasonable or outside of the wide range of professionally competent assistance that trial counsel moved for a mistrial at two proceedings and

objected to the curative instruction given by the trial judge instead of asking the trial judge to conduct a voir dire of the jurors. The presumption in favor of counsel's actions is very strong and, in conjunction with the *Strickland* standard, this Court cannot find that trial counsel provided ineffective assistance of counsel in her response to Petitioner's claim of jury bias.

Pursuant to the standard in § 2254(d), the Court finds that the circuit court's adjudication of this claim did not result in a decision contrary to, or involve an unreasonable application of, federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d). Accordingly, the Court **OVERRULES** Petitioner's objection as to IAC based on trial counsel's failure to request a voir dire.

### 6. *Trial Counsel's Inexperience*

Petitioner's last objection regarding IAC involves trial counsel's inexperience. Petitioner objects to the PF&R's conclusion that Petitioner failed to "establish that his trial counsel's performance was constitutionally deficient, nor does he show a reasonable probability that her actions affected the outcome of his trial." (*See* ECF No. 64 at 57–59.)

On habeas review, the circuit court explained that the law does not require a certain level of experience to establish IAC; instead, the law focuses on what a reasonable attorney would have done under the circumstances based upon an objective standard. (*See* ECF No. 1-2 at 14.) The circuit court ultimately found that Petitioner's trial counsel "spent a significant amount of time conducting a reasonable and adequate investigation of Petitioner's case and the mere fact that Petitioner's jury trial was [her] first jury trial, as lead counsel, does not support a finding of ineffective assistance of counsel." (*Id*. at 15.)

The law is clear that experience is not the basis for determining whether trial counsel's

actions provided ineffective assistance of counsel; instead, a court is to look at the attorney's actual performance. *Kandies v. Polk*, 385 F.3d 457, 469 n. 7 (4th Cir. 2004) (vacated on other grounds by *Kandies v. Polk*, 545 U.S. 1137 (2005)). A court must determine whether the attorney's performance falls below "an objective standard of reasonableness." *Strickland*, 466 U.S. at 687. Here, Petitioner asserts that he was prejudiced because trial counsel did not provide effective representation and should have removed herself from the case due to her lack of trial experience and competence. (*See* ECF No. 68 at 42–47.)

As the Court has found above, Petitioner continues to assert various reasons as to why trial counsel was ineffective, but has yet to provide sufficient evidence as such. This Court has yet to find that based upon any of Petitioner's objections trial counsel was ineffective under *Strickland*, and it will not do so based upon her lack of experience either. Additionally, the circuit court distinguished that this was not trial counsel's first trial; it was her first jury trial as a lead attorney. (ECF Nos. 1-2 at 14; 13-9 at 26.) Any finding that inexperience is by itself grounds for ineffective assistance of counsel would have a chilling effect on young attorneys who are beginning their courtroom experience.

Pursuant to the standard in § 2254(d), the Court finds that the circuit court's adjudication of this claim did not result in a decision contrary to, or involve an unreasonable application of, federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d). Accordingly, the Court **OVERRULES** Petitioner's objection as to IAC based on trial counsel's lack of experience.

## B. *Trial Judge's Handling of Potential Prejudice*

Petitioner alleges that Magistrate Judge Eifert failed to address his concerns regarding

denial of an impartial jury and abuse of discretion by the trial court. (*See* ECF No. 68.) The Court will address these concerns itself.

On habeas review, the circuit court determined even if bias and prejudice does present itself, the trial court is in the best position to judge the sincerity of a juror's pledge to abide by the court's instructions, and therefore it is within the trial court's discretion to determine whether the juror should be disqualified and that determination will not be disturbed upon appeal unless the court clearly abused its discretion. (ECF No. 13-9 at 67.) The circuit court then turned to the facts of the case at hand and found that the trial court assessed the potential for bias and prejudice and determined that there was none on each occasion brought into question by Petitioner, but addressed the jurors each time and provided a curative instruction to them. (*Id*. at 68–70.) The circuit court determined that the juror's fear of repercussions was only an obstacle to reaching a unanimous decision, and that the trial court "took action that it deemed was necessary and appropriate to ensure that the trial was fair for both parties." (*Id*. at 70.) Finally, the circuit court found that the trial court did not err when it gave the curative instruction because it was an "accurate reflection of law and it was necessitated by the unusual circumstances that arose in Petitioner's case." (*Id*. at 71–72.) The circuit court also determined that even if the trial court erred by giving the curative instruction, it would only amount to ordinary trial error and would not rise to the level that would implicate federal or state constitutional rights. (*Id*. at 72–73.)

Petitioner argues that he was denied an impartial jury and that the trial court abused its discretion when the trial judge "failed to conduct a voir dire into the potential prejudice resulting from a juror expressing fear of the 'family' during the 'deliberation' process which was brought to the attention of the Court." (*Id*. at 1, 47–52.) The facts surrounding the objections at hand are

set forth in detail in the PF&R, (ECF No. 64 at 47–50) and need not be repeated here.    Petitioner does not dispute the facts.    (*See* ECF No. 68 at 1, 48.)    As such, the Court adopts the facts as set forth in the PF&R.

A defendant is entitled to impartiality under the Sixth and Fourteenth Amendments. *Witherspoon v. Ill.*, 391 U.S. 510, 518 (1968).    "Due process requires that the accused receive a trial by an impartial jury free from outside influences."    *Sheppard v. Maxwell*, 384 U.S. 333, 362 (1966).    Furthermore, jurors are presumed to be impartial and "the defendant bears the burden of showing a strong possibility of juror bias."    *Poynter v. Ratcliff*, 874 F.2d 219, 221 (4th Cir. 1989); *Wells v. Murray*, 831 F.2d 468, 472 (4th Cir.1987).

Here, Petitioner maintains that the actions by the juror in question were enough to show bias and require a voir dire of each member of the jury.    Concerning the individual juror, it is extremely rare that prejudice would arise because of intimidation in the courtroom.    *United States v. Babb*, 369 F. App'x 503, 511 (4th Cir. 2010).    Further, "due process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable."    *Smith v. Phillips*, 455 U.S. 209, 217 (1982). Both voir dire and protective instructions are available to trial judges as a means of safeguarding juror impartiality, but they are not infallible.    *Id*.    Following the trial judge's curative instruction, the jury resumed their deliberations and returned a verdict.    Even with the possibility of influence, Petitioner fails to show that there was such a strong possibility of juror bias that the decision of the trial judge should be overturned.    Furthermore, in regard to the individual juror and the jury as a whole, the trial judge did not abuse his discretion by not conducting voir dire of each juror.    "Even if improper influence is suggested, there is no requirement that the court conduct individualized

voir dire each time." *Babb*, 369 F. App'x at 511. "Individual questioning, which may tend to unsettle the jury, is only warranted in cases where there is a strong indication of bias or irregularity." *Id.* (citing *United States v. Stafford*, 136 F.3d 1109, 1112-13 (7th Cir. 1998)). As noted, Petitioner has failed to show that there was a strong indication of bias. Furthermore, Petitioner failed to provide any evidence, or even an inkling of indication, that the entire jury had become tainted. Therefore, the actions of the trial judge were within the discretion provided to him under the case law.

Pursuant to the standard in § 2254(d), the Court finds that the circuit court's adjudication of this claim did not result in a decision contrary to, or involve an unreasonable application of, federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d). Accordingly, the Court **DENIES** Petitioner's claim and **OVERRULES** his objection regarding the actions of the trial judge.

## IV. CONCLUSION

For the reasons set forth above, the Court **ADOPTS** the PF&R, (ECF No. 64), **OVERRULES** the Objections, (ECF No. 68), **GRANTS** Respondent's Motion for Summary Judgment, (ECF No. 56), **DENIES** Petitioner's Petition for a Writ of Habeas Corpus, (ECF No. 1), and **DISMISSES** this case from the docket of the Court.

The Court has also considered whether to grant a certificate of appealability. *See* 28 U.S.C. § 2253(c). A certificate will be granted only if there is "a substantial showing of the denial of a constitutional right." § 2253(c)(2). The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this Court is debatable or wrong and that any dispositive procedural ruling is likewise debatable. *See Miller–*

*El v. Cockrell*, 537 U.S. 322, 336–38 (2003); *Slack v. McDaniel*, 529 U.S. 437, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683–84 (4th Cir. 2001). Because Petitioner has not made a substantial showing of the denial of a constitutional right in the § 2254 Petition and objections to the PF&R, the Court **DENIES** a certificate of appealability. Pursuant to Rule 11(a) of the Rules Governing Proceedings Under 28 U.S.C. § 2254, Petitioner may not appeal the Court's denial of a certificate of appealability, but he may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

   **IT IS SO ORDERED**.

   The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

       ENTER:   March 30, 2018

           THOMAS E. JOHNSTON, CHIEF JUDGE